Parker C. J.
delivered the opinion of the Court. It is very clear from the facts stated, that the bank might easily have secured the amount of the note, had they attempted to do it when it became payable, or within a month afterwards ; and that Haynes, the defendant, had he been seasonably called upon and been notified of the non-payment of the note, might without difficulty have obtained security from the property of either or both of the promisors. Had he been an indorser of the note, most clearly by the above facts he would have been discharged, not only because the condition of giving notice was not strictly complied with, but because there was gross negligence on the part of the bank, and a new credit given to the promisors without the consent of the indorser.
Haynes therefore cannot be liable, unless by the form of his contract he became answerable at all events, and unconditionally, for the payment of the note. And it is contended that this is the legal effect of the contract of guaranty into which he entered
It is somewhat extraordinary, that the nature of this contract, and the extent of the liability it creates, are not very clearly settled in the books. It has been sometimes held to be an absolute, sometimes a conditional obligation. Sometimes a guarantee has been deemed a surety, and at others, not more than an indorsee. And this perhaps has arisen from the different forms in which the contract has been made. In several cases, *440 where the party put his name on the hack of the note, without any words written over it at the time, he not being the payee of the note, he has been charged as an original promisor, being considered in the light of a surety, and he has been declared against as such ; but in these cases his signature was given at the time of making the note, or in so short a time afterwards, and under such circumstances, as to have relation to the making of the contract originally. The case of Josselyn v. Ames is of the first class, and that of Moies v. Bird, of the second. In other cases, the signature of a third party, not named in the note, has been given a long time after the making of the note, and without any circumstances showing that this third party had any concern in the original contract. Such was the case of Ulen v. Kittredge, 7 Mass. R. 233.
In the first class of cases, the holder of the note has been allowed to treat the person whose name is on the back, as a surety or original promisor, without any proof of consideration, other than as against the person who signed his name under the note, or of any actual promise on his part to pay, except what is derived from his signature to the note.[1] In the second class of cases, proof has been required of the promise or engagement to become liable, and he is to be charged in no other form than is consistent with that engagement; and it being a collateral engagement to pay the debt of another, there must be proof of a consideration for the promise.[2] The distinction is clearly stated in the case of Hunt v. Adams, 5 Mass. R.‘ 361.
But the cases above cited, where the party signing on tne back of the note has been held to be an original promisor, are where the signature is in blank, and not where a special undertaking is written over it. In such cases the party chargeable, the note not being negotiable, gives authority to the payee or holder to write over his signature such words as will bind him *441 to the payment, not as indorser, for he cannot be such technically to a note not negotiable, but as promisor, surety or guarantee, at his election.[3] No such authority exists, where the tenor and form of the undertaking are already drawn out before the signature of the party.
In the case before us, the signature of the defendant was not in blank, but under the words written by the cashier, the agent of the plaintiffs, which import a guaranty only. This is the only character in which he can be made liable, and if by law a guarantee is not an original promisor, he cannot be sued as such.
We therefore must consider what is the liability of a guarantee upon a promissory note ; whether he is liable at all events, or only upon condition ; and if the latter, whether the condition has been here performed.
This is the point which we think is undecided in this Commonwealth, though there have been many allusions to it in cases such as have been mentioned, in which the question was in relation to the liability of a surety, or of one who put his name on a note not negotiable, or where the party so putting nis name had no authority to assign, not being the payee. But no case, in which the contract was in terms a guaranty, and so intended by the parties, has been presented to the Court. That a guarantee differs in character from a surety, cannot be questioned, for he cannot be sued as a promisor, as the surety may ; his contract must be specially set forth. That he differs from an indorser is equally clear, and for the same reason ; and also because he warrants the solvency of the promisor, which the indorser does not, he being answerable on a strict compliance with the law by the holder, whether the promisor is solvent or not. There are cases which adopt a distinction which is reasonable and just, in which the guarantee is discharged'only by the joint effect of negligence on the part of the holder, and an actual loss or prejudice to the guarantee in consequence of that negligence. It is certainly conformable to the general principles of right and justice, that the creditor who knows of the delinquency of his debtor, and withholds informat"on of it *442 from the guarantee, by reason of which the debt is actually lost, when it might have been saved by either, should not throw the loss upon the guarantee. It is contrary to the general principles of equity, upon which the law of contracts is considered to rest. Can it be supposed that a creditor holding the note of one thought to be in good credit, and who has ample means of paying, shall have a right, when he finds there is an inability to take up the note on its becoming due, to receive partial payment, give further credit, and thus put the debt in jeopardy, and after he has indulged the debtor ad libitum, shall call upon the guarantee for the deficiency, when absolute insolvency has taken place and all other creditors have saved themselves out of his effects ? This would offend all the analogies of the law, which require good faith and diligence, to enable a creditor to call upon parties consequentially liable, and would place a guarantee in a worse condition than a surety ; who, being an original promisor, may take up the note when it becomes due and sue the principal immediately. The glaring injustice of such a position has been discountenanced by those courts which have had the question presented distinctly to them.
In 8 East, 242, Lord Ellenborough says the same strictness of proof is not necessary to charge the guarantee, as would have been necessary to support an action on the bill itself, that is, against an indorser, where, by the law merchant, a demand upon and refusal by the acceptors must have been proved in order to charge the other party on the bill, and this, not withstanding the bankruptcy of the acceptors. Guarantees insure the solvency of the principals, and therefore if the lattei become bankrupt and notoriously insolvent, it is the same thing as if they were dead, and it is nugatory to go through the ceremony of making a demand upon them. Laiorence J. says, though proof of demand of the acceptors, who had become bankrupt, were not necessary to charge the guarantees, yet the latter are not prevented from showing that they ought not to have been called upon at all, for that the principal debtors could have paid the bill if demanded of them. Le Blanc J. says, it is sufficient as against a guarantee, that the holder of the bill could not have obtained the money by making a demand upon the bill.
*443 And in 2 Taunt. 206, it was decided that a guarantee is entitled to notice, if the parties to the bill are not insolvent at the time it is due.
But the principle is more accurately and intelligibly stated by Duncan J. in the case of Cannon v. Gibbs, 9 Serg. & Rawle, 202. “ I think,” says he, “ upon a review of these cases, the line is clearly marked out. It is this ; that the guarantor is discharged, if notice is not given of non-payment to him, that he may avail himself of proper presentment, demand and of due notice of non-payment where the drawer and indorser, or either of them, are solvent at the time the note became due. But where both are then insolvent, this would be primá facie evidence that a demand on them, and notice to the guarantor, would be of no avail, and therefore, the giving notice to a guarantor, not a party to the bill, would be dispensed with, the presumption being, that the guarantor was not prejudiced by the want of notice.”
And this seems to be the true ground ; for it leaves the loss upon the party whose gross negligence is the cause of loss to any one, instead of throwing if upon him who would suffer entirely from the carelessness of the party who would recover of him. Upon this principle we decide the present case in favor of the defendant, without trenching at all upon the decisions relating to the liability of sureties, or those who, by signing their names in blank upon notes not negotiable, are regarded as quasi sureties ; this being clearly a contract of guaranty only, in its form, and subject to the rules which govern that species of contract. It is clear that both the promisors in the note were solvent when it became due, and that they had abundant property liable to attachment. But the plaintiffs, with the knowledge of their delinquency, lay by nine months, during which time their property was sacrificed and all hopes of obtaining payment were by that means lost.[1] Some intima *444 tians were made in the argument, that it was the usage of the bank, when notes have been discounted, to suffer a renewal from time to time, on the payment of a certain portion of the sum loaned, as the notes should become due. It is not stated in the case agreed, that there was such a usage, or that the defendant knew of it. If at the time he gave his guaranty there was any such usage, or any stipulation to that effect, and this was known to the defendant, it may be questionable whether the want of notice would avail him in defence.

Plaintiffs nonsuit.

 See Leonard v. Fredenberg, 8 Johns. R. 29; Tenney v. Prince, A Pick. 386; S. C. 7 Pick. 243; De Wolf v. Rabaud, 1 Peters’s Sup. C. R 476; Wheehight v. Moore, 2 Hall, (New York,) 143; S. C. 1 Hall, 648; Dearborn V. Paries, 5 Greenleaf, 81.

 See Aldridge v. Turner, 1 Gill & Johns. 427; Tenney v. Prince, 7 Pick. 243; Flagg v. Upham, 10 Pick. 148; Neelson v. Sanborne, 2 N. Hamp. R. 414; Read v. Cutts, 7 Greenleaf, 190; Elliott v. Giese, 7 Har. & Johns. 457.

 See Seymour v. Van Slych, 8 Wendell, 403.

 Salisbury v. Hale, 12 Pick. 424; Thomas v. Davis, 14 Pick. 355; Green v. Dodge, 2 Hammond, 430; 3 Kent, (3d edit.) 123; Read v. Cults, 7 Grecnleaf, 186; Sage v Wilcox, 6 Connect. R. 81; Men v Brightmore, 20 Johns. R. 365; Douglass v. Reynolds, 7 Peters, 113; Breed v. Hillhouse,7 Connect. R. 523; Wooleij v. Sargent, 3 Halsted, 262; Grice v. Ricks, 3 Devereux, 65; Bradley v. Carey, 8 Greenleaf, 234 ; Tru v Harding, 3 Fairfield, *444 195; Hall v. Rand, 8 Connect. R. 561; Bayley v. Hazard, 3 Yerger, 487 Williams v. Granger, 4 Day, 444; Chitty on Contr. (4th Am. ed.) 397.